My name is Dan Vondra, and I represent the petitioner, Max Villatoro. We are here today asking the Court to remand Mr. Villatoro's case to the Board of Immigration Appeals with instructions that the Board apply the modified categorical approach to the Iowa Tampering with Records statute. The issue in this case is whether the Board of Immigration Appeals and the immigration judge properly denied Mr. Villatoro a hearing on his application for cancellation of removal as a non-legal permanent resident because both the immigration judge and the Board of Immigration Appeals found that his conviction for tampering with records was categorically a crime involving moral turpitude. The petitioner is in agreement with the government on one point in this case. If the Court finds that the statute is not categorically one involving moral turpitude, then the Court should not proceed to the modified categorical approach because neither the IJ nor the Board of Immigration Appeals actually applied the modified categorical approach. Our argument is straightforward and simple. We argue that the Bobadilla case that this Court decided in 2012 controls the outcome of Mr. Villatoro's case. The government wants to distinguish the Bobadilla case based on the fact that Mr. Bobadilla was a legal permanent resident charged with having been removable as convicted of a crime involving moral turpitude. There are a couple reasons why that distinction fails. First, the Board and the government want to turn this into an issue about the burden of proof. The respondent concedes that the burden of proof is on him to establish eligibility, but this first question of whether the Iowa statute is categorically a crime involving moral turpitude is solely a legal issue. So it doesn't really make sense to talk about that as a burden of proof issue. The second reason that Bobadilla still controls the outcome in this case is the procedural facts that occurred in Mr. Villatoro's case. You'll note from the administrative record at page 606, the case began as a sole charge of inadmissibility for having entered without inspection. So the government chose not to, in the notice to appear, allege that Mr. Villatoro had been convicted of a crime involving moral turpitude. Had the government proceeded that way, there would have been a hearing on the initial removability, the government would have had the burden of proof to submit the conviction documents and establish under either the categorical analysis, the modified categorical, or the third step of what's called Sova Trevino analysis, that the crime involved moral turpitude. The government didn't do that. So Mr. Villatoro, through trial counsel, filed an application for cancellation of removal, claiming that his removal would result in exceptional and extremely unusual hardship to his U.S. citizen children. That was then set for a hearing. Mr. Villatoro showed up for a hearing. There was an off-the-record discussion. The parties came back on the record, which is shown at page 85 of the administrative record, and the government conceded that Villatoro had established the hardship, but the government wanted to argue that he was statutorily ineligible. So what the immigration judge did was continued it to a master calendar or a preliminary hearing and let Villatoro's counsel submit a brief and the conviction documents. That's important for this case because it's similar to Bobadilla in that at that stage in the proceeding, for the government to prevail the same way as in Bobadilla's case, the government had to prove that this was categorically a crime involving moral turpitude. So why isn't a violation of the Iowa statute on tampering with records categorically a crime of moral turpitude? The short answer to that is the Iowa statute is broader than the statute that was found to not categorically involve moral turpitude in Bobadilla's case. Well, Bobadilla gave a false name in that traffic stop, right? Yep. Would that be covered by the Iowa statute? It would. So if you look at the recent Supreme Court cases, talk about analyzing convictions, analyzing the elements of the offense. I don't see how giving a false name in a traffic stop would be falsifying or removing a writing or record. It wouldn't really be covered by the Iowa statute, would it? The Iowa statute makes it a crime for knowing that the person has no privilege to falsify, destroy, or conceal a writing or record with the intent to deceive, injure, anyone, conceal any wrongdoing. So if you give a false name, you are falsifying then the officer's report when he writes that information down on the ticket with the intent to possibly deceive the officer into thinking you're somebody who is not or injure. Do you have any Iowa case that says that a motorist falsifies a record by giving inaccurate information to the officer who then writes it down? I'm not sure that's the natural reading of the statute. We believe that it is the natural reading of the statute, and there is not much case law on the Iowa tampering statute. We believe that the BIA erred when it read that requirement in that you had to have an actual case to point to. If you have to have an actual case, then why should it be limited to an appellate case? Why not a district court case? Well, I wasn't necessarily asking if you need an actual case. I was just wondering if you had one because that would show whether your argument is plausible. If there's no case, we can read the statute and decide for ourselves. I just wondered if you had any authority. No, and we believe that the categorical approach at this issue of the legal analysis, it is appropriate for the court to simply look at the statute, look at the elements of the offense, and read them in a plain meaning and a plain sense and determine whether that categorically involves moral turpitude. Well, what about the requirement of intent to deceive? Isn't there a good bit of authority saying that a crime that has that mens rea qualifies? There is, and we also concede that. We are arguing that the Board of Immigration Appeals erred because they didn't do the divisibility analysis. So under Silva-Trovino and under De Camp, when you have a divisible statute, the board... Which part are you saying would not qualify? Intent to injure? Intent to injure anyone, the intent to conceal any wrongdoing, is broader than the intent to obstruct justice that was found not to categorically involve moral turpitude. The intent to conceal any wrongdoing doesn't necessarily even have to be illegal wrongdoing, just on the face of the statute. The intent to injure could be a de minimis injury. We don't know what level of injury is required on the plain meaning of the statute. Similarly, the other elements under the Iowa statute that are broader than those that were in Boveda are the writing or record. A writing has its own definition under Iowa Code 715A.1. It's generally governmental documents and things of that nature. The record could be a private record. It could be an employment record. So that's broader than in Boveda, where he was required to give a fictitious name or fraudulent ID. Even the first part of the Iowa statute is broader than what was in Boveda. The falsifying, destroying, removing, or concealing, those offenses are less active and are more passive than giving an officer a fictitious name or ID. Again, since this includes private actors, it could be something you give or conceal to your boss to conceal something you didn't want them to know. Counselor, if I understand you, and you can correct me if I'm incorrect, the relief you're requesting is that we would remand and ask the BIA to conduct a modified categorical approach. And I assume in that process they would look at the actual conduct of the petitioner? I think the actual conduct is still an open question. But isn't that what you do in a modified categorical approach? In the modified categorical approach, you're just looking at the trial information, the guilty plea, the sentencing order, any restitution order if there is one, and then determining if that helps you decide which part of the divisible statute the respondent pled guilty to. But Sylva Trevino says that the board thinks they can then look at conduct as well, right? That is what the board. I know there's some circuits that disagree that that's permissible. Right. My analysis would be that since you're talking about a conviction involving moral turpitude under De Camp and Moncrief, you no longer look at the actual conduct. But that issue, frankly, isn't before this court because the board didn't even apply Sylva Trevino step one. They did not line up the generic definition of crime involving moral turpitude and then look at the permutations of the Iowa statute to determine if each one of those permutations was the same or narrower than inherently base, vile, or depraved conduct. So they looked at the statute and said it's under this chapter that involves fraud, but the actual elements of the offense do not involve any element that is fraud. They worked backwards. They said, well, it's under the fraud chapter, therefore it must be fraudulent. Fraud is a crime involving moral turpitude, therefore this categorically involves moral turpitude. With respect to the deference owed to the BIA, in this case, since it was an unpublished BIA opinion, we believe that Skidmore deference is appropriate. The BIA should only be deferred to to the extent that it's persuasive. An unpublished BIA opinion does not have the force of law. The BIA won't even defer to itself or this member on this same issue because it was unpublished. Finally, it is important to remember that the board and the immigration judge did treat this as a motion to pre-termit Mr. Villatoro's application, and for that reason they denied him the hearing. To the extent that the board also misapplied Silva-Trevino, the board stated that he had to point to an actual case where Iowa applied this to conduct that did not involve moral turpitude. If he has to point to an actual case, that then becomes a factual issue. If it was a factual issue, then he should have been allowed an individual hearing on his application, and as you can see from the administrative record at 91 and 97, his decision was issued via telephone at a master calendar or a preliminary hearing. Well, how do you suppose the board should go about answering that question if it's not allowed to look for a specific case? The board should first on a categorical look at only the elements of the offense and make a legal determination, and really this is then the immigration judge should then go to the modified categorical approach. Had they done that analysis, it could have ended the case right at that point, and if that still doesn't resolve the issue, then that's when the application should have a hearing. All the factual issues should be developed. The immigration judge will always... My question was if the board is trying to decide would this statute extend to non-turpitudinous conduct, you say even if there are no Iowa cases that extend to non-turpitudinous conduct, the board's not allowed to require the petitioner to furnish a case, how would the board decide then whether Iowa extends the statute to that conduct? Just based on the elements and some estimate of what it thinks Iowa would do? Exactly. That's all that's required under the DeCant case is you look at the elements of the offense and decide if those are the same or narrower than generally. Well, isn't that what the board was doing, but just using the absence of cases as evidence of what the Iowa courts would do? Well, I think the main error was that the board imported that fraud element of the offense, which we believe was impermissible at that point. It should have just been a legal issue that they can... And it's a step one. It's supposed to be hard for the government to prove that it's a categorical match at step one. So at step one, if there is a realistic probability, not a certainty, again, an actual case would refer to a certainty. If there's a realistic probability that these elements in this offense could be applied to non-turpiditudinous conduct because they are so broad, then the board should let the case proceed to a hearing. I would like to reserve my last minute here for rebuttal. Thank you. Thank you, Mr. Vaughn. Ms. McKay. Good morning, Your Honors. May it please the Court. Leslie McKay for the respondent, Eric Holder. Your Honors, this case begins and ends with the statute. It's not divisible. It's categorically a crime involving moral turpitude, as the board held in this case. Because this case is at the relief stage, it absolutely was petitioner's burden to come forward in his appeal to the board and identify a case, if he could, that took this case outside the realistic probability test announced in Silva-Trevino. He didn't do that. The board expressly noted that he failed to do that. In fact, there aren't any cases in Iowa that would take this case outside of that context. And Judge Carlton, you asked if he had a case. There really are only five cases that I could find that apply this statute. Creation of false sales receipts is one. Creation of false proof of a service on a subpoena that was never served is a second one. Attempting to obtain a duplicate certificate of vehicle title under a false name. Falsifying vehicle titles to show an exemption from use tax when transactions were taxable. And attempting to obtain an Iowa driver's license using a false name and social security number. Those are the five cases, also subjects of the five cases. None of those cases was raised by petitioner as a reason to take this case outside of the categorical context. None of those cases, in my opinion, takes this case outside of that context. And I think, really, the court can stop there. Petitioner makes a lot of arguments about the fact. He believes that the Iowa statute is broader than the Minnesota statute that was at issue in Bobadilla. I'm not entirely clear on why that comparison really matters, but I disagree. I think the Iowa statute here is far more specific. It involves the intent to deceive, injure, or conceal any wrongdoing. Well, I assume it matters in his view because if Bobadilla was not categorically a crime of qualifying crime because it was too broad and this statute is broader, then it would follow logically that this one isn't qualifying either. Isn't that why he said that? I see what he's trying to do, but I think that the court's focus in every case and the board's focus, the agency's focus in every one of these cases, should be on the statute at issue in that case. So I see what he's trying to do with it. But I think that we should keep our focus on the Iowa statute, and I disagree that the Iowa statute is broader than the Minnesota intent to obstruct justice. I think that that is a far more vague and undefined term than intent to deceive, intent to injure, intent to conceal any wrongdoing. And I think that those three intents involved in the Iowa statute are far more consistent with the sort of full panoply of CIMT cases and the types of conduct that we talk about when we think about turpitude and misconduct. Petitioner also does a great deal with fraud and that fraud is not an element of this statute, and I think he's really elevating that and suggesting that because fraud is not an element of the statute, this statute cannot be a crime involving moral turpitude, and that's not true. Certainly fraud can be an element of crimes involving moral turpitude, and if fraud is an element, then I think under Supreme Court law it is a crime involving moral turpitude. But that's not that the fact that fraud is not an element here does not take this case outside of the realm of crimes involving moral turpitude. It doesn't make the conduct here intrinsically okay or not intrinsically wrong, and that's the focus. That intent, what's happening with this statute, that's where the focus should be. That's where the Board's focus was. When you say it's not divisible, wouldn't it be divisible in the sense that either intent to deceive or injure anyone or conceal any wrongdoing? Aren't any one of those sufficient? It would be, and I suppose. Is your argument that all three qualify? My argument is that all three qualify. So it's divisible, but it's categorically qualifying because is that an accurate use of the concept of divisibility? I think so. It depends on how you read De Camp also because De Camp has done some things with divisibility and how we traditionally think about divisibility. But my position is that this statute is not divisible because any one of those three intents would be sufficient. I'm not sure I saw much argument by the petitioner in their opening brief along these lines, but for the sake of argument, why wouldn't concealing any wrongdoing be very close to Bobadilla's obstruction of justice type? I think in Bobadilla, the court was concerned and focused a little bit more on the actual conduct that occurred in that case and the fact that Minnesota prosecutes under that obstruction of justice standard even if the attempt at obstructing justice isn't successful. So if giving a false name and the person immediately recants, sort of realizes, oh, I don't want to do that, and recants and gives their correct name. I don't think that concern is really evident here. When you have a statute that prohibits concealing a wrongdoing, you have someone who is acting in bad faith, who is acting in a manner that's intrinsically wrong. I also, frankly, don't think that recanting sort of takes you outside of the crime-involving moral turpitude context because the inquiry is statute-based at that level. Finally, just to hit one last point that he brought up, he's suggesting that he should have had a hearing on the realistic probability issue, that once the agency decided that this was categorically a crime-involving moral turpitude and placed the burden on him, that he should have had a hearing. I disagree. He should have raised his legal arguments in his appeal to the board, and he certainly could have presented, as I said earlier, any Iowa case or cases that he thought would satisfy that burden of proof, and he didn't do so, which is really the basis of the board's decision. The board looked at this statute. They looked at it knowingly. They looked at the intents required to deceive, injure, or conceal any wrongdoing, and they looked at his failure to come forward with any case law or any argument even that would take this case outside the crime-involving moral turpitude. Well, if we decided the case on that basis, then this would be very minimal precedent, right? Because we said he didn't come forward to the board with any information about how the Iowa law is applied and, therefore, has waived that argument that he makes on appeal, then it would be open to the next person to argue that the statute is not categorical. That's true. And that's certainly if the court can certainly do that, and we argued that in our brief. That's certainly one way to decide it. I also think that because the court has de novo review over the legal issue, there is some room here. And if you wanted to go farther and say look for yourself at the step one, at this categorical analysis under Silva-Trevino, I think you could do so. You don't need to in order to dispose of this case. If there are no further questions, I would respectfully ask that the court deny the petition for review. Thank you. Mr. Vondra. Thank you. Mr. Vondra, the question I meant to ask earlier, are you familiar with the Iowa case, Iowa Supreme Court Board of Professional Ethics and Conduct v. Romeo? I am not, Your Honor. Okay. In rebuttal, I would just like to first state that the Board of Immigration Appeals was bound by Boveda, and they did not really distinguish that or explain why the elements under the Iowa offense were different or the same as Boveda. So to the extent the Board didn't consider Boveda properly, we think they erred in that respect. And my final point is we really, on the legal analysis, want to avoid having to get into fact-specific, pointing to particular cases on the first step one legal issue. The reading of the statute, the elements of the offense, are clear enough that this is not a categorical match. The Duaneus Alvarez case, where it talks about a realistic probability, would be in a situation where you're arguing knowing doesn't really mean knowing. They were arguing theft didn't really mean theft under the natural and probable consequences doctrine under California. Thank you. All right. Seeing no additional questions, I think that concludes your case.